## Hostetter, et al. v. Green.

(Decided November 14, 1912.)

### Appeal from Franklin Circuit Court.

1. Husband and Wife—Parents of Wife May Keep Her in Their House and Advise Her as to Her Relations With Husband—Action

by Husband for Damages.—The parents of a wife may lawfully take and keep her in their house, and may lawfully advise her as to her relations with her husband, acting in good faith on reasonable grounds and in the honest desire to promote her welfare and happiness, and they are not liable for doing any of these things unless they acted wrongfully and maliciously and not in good faith on reasonable grounds.

2.   Same—Pleading—Parental Privilege.—An answer which shows that the defendants are the parents of the wife, and denies malice, is sufficient to present the question of parental privilege.

3.   Judgment—Reversal—Evidence—Absence of Avowal.—No reversal can be made for the refusal of the court to admit evidence in the absence of an avowal of what the witness would state.

4.   Husband and Wife—Evidence of Occurrences Prior to Marriage.—Where the husband and wife had lived together harmoniously for six years and there was no trouble between the husband and the wife's family, evidence as to what had occurred before they were married is inadmissible in an action for alienating the wife's affections growing out of a difficulty then arising between the husband and the wife's family.

IRA JULIAN and GUY H. BRIGGS for appellants.

SCOTT & HAMILTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—
Reversing.

Attilla Green brought this suit against J. P. Hostetter, and Mary E. Hostetter, to recover damages for the alienation of the affections of his wife, Whitney Green. The facts of the case are about these: Attilla Green and his wife were married on February 25, 1903. He then lived with his father on a farm adjoining the farm on which the Hostetters live. After the marriage, he and his wife lived with his father until about September, 1909, when they moved to Alton, Kentucky, and began housekeeping. In October following his wife was taken with typhoid fever, and being quite sick, was taken by Green to her father's. He remained there and assisted in nursing her. Things went along reasonably well until December 3, when he complained that the mattress on which he was sleeping in the room where his wife was sick was hard and uncomfortable. His wife was very sick at the time, and, the Hostetters say, not expected to live through the night. He says in substance that the Hostetters told him the bed was good enough for him, and if he didn't like it he could sleep in the barn. They say they told him he could have another

bed. He left the house that night and refused to return the next day. J. P. Hostetter knew nothing about the trouble over the bed as he was asleep. The next day the wife kept asking for Green; and the Hostetters thought that his absence was making her worse, but they could not induce him to return. The next day, or December 5, her two brothers, who had come to see their sister, went to see Green and told him that he had to come and see their sister, telling him that if he did not, the coroner would be given a job. He then came over but did not stay long, and his visits from this time on were less frequent than the Hostetters thought he ought to have made.

The proof is very conflicting as to what occurred, but on December 17 a note was written signed by his wife in which practically a separation was suggested. On this day too he wrote J. P. Hostetter a note saying that he had forbidden him the place, and Hostetter sent him a note saying that he had not done so. While the proof is conflicting there was proof for the plaintiff to the effect that Mrs. Hostetter insisted on Mrs. Green separating from her husband, and that J. P. Hostetter forbade his coming to the house, and that he had the same view as his wife. Green did not see his wife any more; or, so far as the record shows, make an effort to see her until sometime in January when the Hostetters had concluded to take her to Florida, hoping that the change of climate would do her good. When they took her to the train to go to Lexington to take the train for Florida, he met her at the station. The proof is conflicting as to what occurred there. He says that Mrs. Hostetter would not allow him to talk to his wife, and abused him very grossly in her presence. Mr. Hostetter was present and took Green out of the room, and in substance told him that he was taking no hand in the matter, and that his wife could go with him if she wished to. It would seem from all the proof that Green did talk there with his wife considerably, and that she was very uncertain as to what she would do, but when the train came they put her on the train and took her to Florida. In February after this and while she was in Florida, Green brought this suit. After her return from Florida she made two distinct efforts to see her husband apparently for the purpose of effecting a reconciliation. But he avoided her on one occasion, and on

the other refused to talk with her, and when asked on the trial why he did this, said that he wanted vindication. There is much in the evidence showing that the Hostetters became violently incensed at the way Green had treated his wife after the dispute over the bed on December 3; and there was, taking all the proof together, sufficient evidence to submit the case to the jury. The first jury to whom the case was submitted, failed to agree. The second jury found a verdict for the plaintiff in the sum of $1,500.00, and the Hostetters appeal.

The error chiefly relied on for reversal is the failure of the court properly to instruct the jury. The court gave the jury these instructions:

"1. If the jury believe from the evidence that the defendant J. P. Hostetter and Mary E. Hostetter or either of them wrongfully and maliciously and for the purpose of alienating the affections of plaintiff's wife from him, made statements to the plaintiff's wife or talked to her or so acted towards her and the plaintiff as to poison her mind against the plaintiff and cause the plaintiff's wife to abandon him, and that the affections of the plaintiff's wife were thereby alienated from him, and that he thereby lost the comfort of his wife's society, the jury should find for the plaintiff against both the defendants, if they believe from the evidence that both did the things mentioned in this instruction wrongfully and maliciously and with the purpose mentioned in this instruction, or if they believe from the evidence that only one of the defendants did the things mentioned in this instruction wrongfully and maliciously and with the purpose above indicated, the jury should find for the plaintiff only against that defendant.

"2. Unless the jury believe from the evidence that the defendants, J. P. Hostetter and Mary E. Hostetter, or one of them, wrongfully and maliciously and for the purpose of alienating the affections of the plaintiff's wife from him made statements to her or talked to her or so acted as defined in instruction No. 1 as to poison her mind against her husband and cause her to abandon him, and that the affections of the plaintiff's wife were thereby alienated from him, the jury should find for the defendants.

"3. If the jury find for the plaintiffs, they should fix the damages at such a sum as they may believe from the evidence will fairly and reasonably compensate the

plaintiff for the loss of his wife's society, assistance, affection and companionship, and for any mental suffering the jury may believe from the evidence the plaintiff endured thereby, not to exceed $10,000.00, the sum claimed by the plaintiff in the petition.

"4. The jury may find for the plaintiff against both defendants, or for the plaintiff against one defendant and for the other defendant or for both defendants."

We find no error in these instructions so far as they go. The defendant however asked these additional instructions which were refused:

"1. The jury are further instructed that the defendants, being the parents of the plaintiff's wife, had the right to counsel and advise her regarding her relations with the plaintiff, if such counsel and advice was offered in good faith for the welfare of the daughter, the plaintiff's wife and the defendants further had the right to receive their daughter, the plaintiff's wife into their home and to harbor her there, provided such harboring was had without any purpose on defendants' part to separate plaintiff from his wife or to deprive plaintiff of his wife's society.

"2. If the jury believe from the evidence that plaintiff himself voluntarily left his wife or that she of her own accord left him, it matters not for what reason, the jury will find for the defendants."

It is insisted for the plaintiff that the court did not err in refusing the first of these instructions because this matter was not pleaded, and we are referred to authority to the effect that such matter must be pleaded. But in the answer the defendants did aver that they were the father and mother of the wife, and they denied that they had acted maliciously. Under this answer they could give in evidence any matter showing a want of malice; for malice is the gist of the action (Scott v. O'Brien, 129 Ky., 1); and when they pleaded that the wife was their daughter, they were entitled to an instruction presenting the law on this phase of the matter to the jury. In 21 Cyc., 1619, the rule on the subject is thus stated:

"Parents may, in good faith, promoted by sincere desire to promote the welfare and happiness of their children, advise them as to their domestic affairs; and a parent may lawfully harbor and protect his married daughter when seeking his home to avoid the illtreat-

ment of her husband. Consequently when such shelter is afforded, or when parental advice is honestly given under such motives it is a defense to an action by the husband for the alienation of the wife's affections. This rule applies also in favor of other near relatives of plaintiff's spouse, and also in favor of such spouse's guardian. The privilege accorded to parents, relatives, and guardians of a spouse in their communications and conduct with reference to the marital relation does not exist in favor of strangers. In the former case, advice which may lead to a separation is presumed to have been given in good faith, but in case of a stranger malice is presumed. A parent may of course be guilty of wrongfully alienating the affections of his child, but only where he does so maliciously."

In Cooley on Torts, side pages 264, 265, after stating the rule applicable to strangers, the learned author says:

"If, however, the interference is by the parents of the wife, on an assumption that the wife is illtreated to an extent that justifies her in withdrawing from her husband's society and control, it may reasonably be presumed that they have acted with commendable motives, and a clear case of want of justification may be justly required to be shown before they should be held responsible."

Under the evidence the court should have given the jury this instruction:

5. The jury are further instructed that the defendants being the parents of the plaintiff's wife, had the right to receive their daughter into their home and to harbor her there; also the right to counsel and advise her regarding her relations with the plaintiff, in good faith on reasonable grounds and in the honest desire to promote her welfare and happiness, and they are not responsible for doing any of these things, unless they acted not in good faith as above defined, but wrongfully and maliciously, with a view to separate her from her husband. Reasonable grounds are such as a person of ordinary prudence would act on.

There was evidence showing that the plaintiff's own neglect of his wife was the cause of the trouble, and under the evidence the court should have also given the jury this instruction:

6. If the jury believe from the evidence that the plaintiff himself by his own misconduct brought about

the trouble between him and his wife, or that she of her own accord left him, and was not induced so to do by the defendants wrongfully and maliciously as set out in the foregoing instructions, they should find for the defendants.

On another trial all the evidence as to what occurred before the plaintiff and his wife were married will be omitted, as the proof is uncontradicted that they lived harmoniously together for over six years, and that the parties were perfectly friendly until the trouble came up while his wife was sick at the Hostetters.

It is insisted that certain letters written between the husband and wife were improperly admitted in evidence, but this was done by consent of parties. It is also complained that certain declarations of the wife were not admitted, but there is no avowal as to what the witness would state.

In Instruction 2 on another trial the court will substitute for the words ''as defined in No. 1,'' these words ''or so acted toward her and the plaintiff.'' This will make it just the converse of No. 1, and will perhaps make the sense clearer.

Judgment reversed and cause remanded for a new trial.