## McLain v. Burdette, et al.

(Decided March 13, 1917.)

### Appeal from Marion Circuit Court.

1. Husband and Wife—Action for Alienation of Affections of Wife —Evidence.—In an action by the husband for the alienation of the affections of his wife, a threatening letter written to him personally by the defendant was not admissible in evidence.

2. Husband and Wife—Alienation of Affections—Evidence as to Interviews with Wife.—Where the wife had brought a suit for divorce against the husband, it was not permissible for him to prove by other persons, in a suit by him for alienating her affections, that they had talked with his wife and advised her to dismiss the divorce suit.

3. Husband and Wife—Alienation of Affections—Evidence as to Statements of Wife.—In a suit by the husband for alienation of the affections of his wife, it is competent for the defendant to

testify concerning statements made to him by the wife which showed her state of mind and feeling toward her husband.

4. Husband and Wife—Alienation of Affections—Effect to be Given to Verdict of Jury.—In cases like this the verdict of a jury is entitled to great weight and should not be set aside unless it plainly appears that prejudicial error was committed during the trial.

H. W. RIVES for appellant.

H. S. McELROY for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This was a suit by Don McLain, the appellant, against D. Burdette and his wife, the appellees, to recover damages on account of the alleged alienation by them of the affections of his wife. On the trial of the case the court directed a verdict in favor of D. Burdette, but let the case go to the jury as to Mrs. Burdette. The jury found a verdict in her favor, and from the judgment on this verdict, as well as the ruling of the court in directing a verdict as to D. Burdette, this appeal is prosecuted.

Some twenty years before this suit was brought McLain, who was a farmer, married a younger sister of Mrs. Burdette, and there was born of this marriage six children. The eldest, whose name was Henry, ran away from home in January, 1915, when he was nineteen years old and went to the state of Iowa. The other children remained at home. The Burdettes lived several miles from the McLains, and the relations between the families appear to have been friendly and in every way agreeable until some time in the early summer of 1915. Mrs. Burdette and her younger and only sister, Mrs. McLain, were especially intimate, and as was natural the younger looked to the older for advice and counsel. Nor does the record disclose any noticeable unpleasantness in the McLain family until after the boy Henry left home, but his departure, and the manner of it, which McLain attributed to his wife, seem to have been the cause of much discord between them, culminating, in June, 1915, in a suit brought by Mrs. McLain for divorce. This divorce suit is not in the record, nor does the record show the grounds on which it was based or the disposition made of it. But counsel for appellant in his brief mentions the fact that an absolute divorce was denied and a divorce from bed and board granted.

In this connection it might also be mentioned that it appears that shortly after the suit was filed an injunction

was issued by the circuit judge on the motion of Mrs. McLain restraining him from interfering with or injuring her or disposing of his personal property, and that on July 7, 1915, Mrs. McLain signed an agreement so modifying the restraining order as to permit McLain to remain on the farm and cultivate the crops. It may also be here said that there is no evidence that D. Burdette took any part in attempting to alienate the affections of Mrs. McLain, if they were alienated, and the court properly directed a verdict in his favor.

The evidence as to the interference of Mrs. Burdette in the domestic affairs of the McLains is confined chiefly to four letters that she wrote to Mrs. McLain after the divorce suit was filed. These letters exhibited an unfriendly spirit towards McLain and mentioned his name in very disrespectful and uncomplimentary terms, and also advised against any adjustment that might result in the dismissal of the divorce suit. It also appears that in July she wrote a threatening letter to McLain, warning him of the punishment that he would receive if he was not careful in his conduct.

It should, however, be kept in mind that these letters were written some time after the divorce suit had been brought by Mrs. McLain, and this divorce suit as well as the judgment therein establish the fact that the affections of Mrs. McLain had been alienated from her husband before Mrs. Burdette actively espoused the cause of her sister, and endeavored, as the letters show, to prevent a reconciliation between her sister and her husband.

McLain was the only material witness in his own behalf, and, as we have stated, the letters written by Mrs. Burdette, and offered as evidence through him, constituted the substance of the case he sought to make out against her.

Mrs. Burdette testified, in substance, that in May, 1915, which was before the divorce suit was filed, she received a letter from her sister, which letter appears in the record, illustrating the unpleasant relations that then existed between Mrs. McLain and her husband, and setting out a number of grievances that Mrs. McLain had against him on account of his misconduct. Other letters written by her to Mrs. Burdette in July and August, 1915, further serve to show the bad state of feeling and the disagreeable relations that existed between McLain and his wife.

It further appears in her evidence that the letter from Mrs. McLain to her in May was written before she had written any of the letters produced in the evidence of McLain, and the other letters written by her to Mrs. McLain were in response to letters received from her. She further said that before the divorce suit was brought Mrs. McLain told her that McLain used very abusive language toward her and had struck her on several occasions, and after hearing through the letter of May 30th, and in conversations with her sister afterward, about the behavior of McLain, at her sister's request she accompanied her to see the attorney who brought the divorce suit. She also testified as to the intimate relation that had always existed between her and her sister and said that her sister through life frequently advised with her. That she had no ill feeling towards McLain until her sister told her how he mistreated and abused her, and then she naturally took her sister's part and did what she could to help in the divorce suit. That she did not initiate the trouble between her sister and McLain or have any part in bringing it about. That the relations between her family and McLain had always been agreeable until his conduct toward her sister caused her to dislike him.

Three of the children of the McLains testified in behalf of Mrs. Burdette and related various acts of McLain toward their mother indicating ill treatment.

With the evidence substantially in the condition stated, the court gave to the jury instructions similar to those approved in Hostetter v. Green, 150 Ky. 551, and although the instructions given are complained of by counsel for appellant, we do not think the objection to them is well taken.

It is also urged that the court committed error in failing to give instruction "A," reading as follows: "If the jury believe from the evidence that defendant, Edna Burdette, by herself or in conjunction with others, wantonly or maliciously, by personal interviews or by letters, wilfully undertook to break up plaintiff's home by alienating the affections of plaintiff's wife or by intimidating plaintiff, and by such means did break up plaintiff's family and his home, they will find for plaintiff."

The idea embraced in this instruction was, we think, embodied in more correct form in the instructions given.

It is also insisted that the court should have given the following instruction based on the threatening letter written by Mrs. Burdette to McLain: "If the jury believe from the evidence that defendant, Edna Burdette,

with the intent to intimidate plaintiff and to drive him from his home and family, wrote and sent to him an anonymous letter threatening him with serious bodily harm or death unless he should desert his home and family, they will find for plaintiff.''

This instruction had no place in the case, and the court properly refused to give it. The cause of action relied on by plaintiff was the alienation by the defendants of the affections of his wife, and to this cause of action the evidence as well as the instructions should have been confined. If Mrs. Burdette wrote to McLain a threatening letter, this might furnish the basis of a prosecution against her or possibly ground for a civil action in his behalf, but we do not understand how a threatening letter written to him could have operated to alienate the affections of his wife.

It is further argued that the trial judge should have permitted the father of McLain and other persons to testify that some time after the divorce suit was instituted they had talked to Mrs. McLain about dismissing the suit and arranging amicably the differences between her and her husband.

We are inclined to the opinion that the court properly refused to allow this evidence to go to the jury, upon the ground that it was not relevant to the issue in the case, which was, did the Burdettes alienate the affections of Mrs. McLain from her husband? Of course, in developing this issue both parties had the right to introduce such relevant evidence as would tend to show the relations between McLain and his wife and whether those relations were friendly or hostile, pleasant or disagreeable, cordial or cool, but we are unable to perceive how the mere fact, as shown by the question and avowal, that the father of appellant or other persons had advised Mrs. McLain to dismiss the divorce suit, could throw any light on this issue.

It is also complained that Mrs. Burdette was permitted to relate statements made to her by Mrs. McLain conducing to show the state of feeling between Mrs. McLain and her husband and the reasons why she had brought the divorce suit and become alienated from him.

In Willey v. Howell, 159 Ky. 805, which was an alienation suit brought by the husband against the father of his wife, evidence of this nature was held to be competent, the court saying, that it was competent for the father to prove declarations, written or oral, made to him by his daughter which tended to show her state of mind

and feeling toward her husband and her intention with respect to remaining with or leaving him. To the same effect are Leucht v. Leucht, 129 Ky. 700, and Scott v. O'Brien, 129 Ky. 1.

On the second appeal of Willey v. Howell, 168 Ky. 466, the court, in ruling that statements made by the wife to her father showing the relations that existed between her and her husband, who was suing her father for alienating her affections, constituted competent evidence, said: "Nevertheless, the witness should have been permitted to tell whether or not she told her father of appellee's treatment of her, and if so, when and what she told him. The fact that she imparted this information to her father and what she told him are not within the prohibition of the above section as construed, and it was highly prejudicial to appellant to deny him this evidence, as the very gist of the action against him was whether or not he acted unreasonably or in good faith in what he said and did thereafter. She had a right when troubles arose between her and her husband to apply to her father for advice and succor, and it was necessary that the jury in trying the case, in order to determine whether the father was acting wrongfully and maliciously, or in good faith, and as he had a right to do, to know what actuated him. Therefore, he had a right to present to the jury evidence of what his daughter had told him about her husband's treatment of her so that the jury might know what was operating upon his mind in what he said or did, if anything, with reference to the separation of these people. Without knowing what had been told him by his daughter the jury would not know under what information he was acting, and could not determine whether he was acting rightfully or wrongfully."

Other errors in the admission and rejection of evidence are called to our attention in brief of counsel for appellant, but after carefully considering them, our conclusion is that the rulings of the trial court, although, perhaps, in some instances not strictly correct, were not so prejudicial as to warrant us in interfering with the verdict of the jury.

It is, of course, true, as counsel for appellant argues with much force, that the marriage relation is the most sacred and intimate known to our social order, and that any wrongful effort to interfere with it, or disturb its continuity or harmony, should be condemned and punished. But it is also true that estrangements come up between husband and wife which have their origin en-

tirely within the domestic circle, uninfluenced by the advice, counsel or encouragement of outsiders, and when unfortunate conditions like this arise, the parties have the right to go to members of their family and to intimate friends in whom they have confidence and ask their advice, and when this advice is given in good faith, without malice or a purpose to cause a separation, it will not be actionable, although it may widen the breach between the husband and the wife.

The troubles between McLain and his wife originated without any interference or encouragement on the part of the Burdettes, but, after they came up, Mrs. McLain sought the advice and counsel of her sister, and her relation of the wrongs, whether real or imaginary, committed by her husband aroused the sympathy of her sister, who gave to Mrs. McLain such advice as under the circumstances seemed to her to be best. This counsel and advice the jury found was not given wrongfully or maliciously or with a view of separating her from her husband, but was given in an honest desire to promote her welfare and happiness, and we are not disposed to interfere with this finding on the facts.

In cases like this a jury of the county, who are presumably acquainted with the parties and witnesses, and who understand the local surroundings, are peculiarly well qualified, being themselves married men, to come to a correct conclusion, and their verdict should not be set aside unless it plainly appears that prejudicial error was committed during the trial.

Upon the whole case we find no substantial reasons for disturbing the judgment and it is affirmed.