METCALF v. TIFFANY.

1. HUSBAND AND WIFE—ALIENATION OF HUSBAND'S AFFECTIONS.
    Evidence reviewed, and *held* to be sufficient to justify a finding by the jury that the defendant was guilty of the alienation of the affections of plaintiff's husband. GRANT, J., dissenting.

2. SAME—DAMAGES—LOSS OF SUPPORT—RELEASE AND DISCHARGE.
    Where a wife, by articles of separation between herself and husband, for a valuable consideration paid and accepted,

releases the husband from all obligations to support and main-
tain her, she cannot thereafter, in an action for the alienation
of the husband's affections, recover damages for the loss of
such support. McGRATH, C. J., dissenting.

Error to Wayne; Hosmer, J. Submitted March 1, 1895.
Decided October 1, 1895.

Case by Ella Metcalf against Belle M. Tiffany for the
alienation of the affections of plaintiff's husband. From
a judgment for the plaintiff, defendant brings error. Re-
versed.

*Corliss, Andrus & Leete (Edwin F. Conely,* of counsel),
for appellant.

*Willcox & Whelan (Henry M. Duffield,* of counsel), for
appellee.

GRANT, J. The plaintiff recovered verdict and judg-
ment for the alienation of her husband's affections. The
declaration contains two counts. The first count charges
that while the plaintiff was living happily with her hus-
band, enjoying his affection, support, protection, and
respect, the defendant unlawfully, willfully, wickedly,
and maliciously gained the affection of her husband, and
sought to persuade and entice him, by offers of money
and a comfortable home and other alluring promises, to
leave her without support and drive her from her home
in the city of Detroit; that at various times between the
26th day of December, 1888, and the 17th day of Sep-
tember, 1891, by letters and otherwise, and by arts and
wiles, the defendant continued her unlawful induce-
ments, by offers of money to him and otherwise, and
finally, on the 17th day of September, 1891, succeeded
in willfully, unlawfully, and maliciously enticing him to
desert plaintiff and drive her from his home and leave
her without means of support and alone, and to remain
and live with the said defendant in her house in the city
of Detroit, at which place she has ever since detained and

harbored him. The second count is more general in its statements, and it is unnecessary to notice it.

Plaintiff and her husband were married in December, 1888, she being 23 years old, and he 24. Mrs. Tiffany was a widow 42 years old, with one child, a daughter, then about 13 years of age. Her husband was a physician, and, after his death, she continued to reside in the house (754 West Fort street) in which her husband had had an office. Mr. Metcalf had graduated from the medical department of the University, and in July, 1888, applied to Mrs. Tiffany, to whom he was then unknown, for the office, which he rented. In September following, he commenced boarding with her. After the marriage, plaintiff and her husband boarded with Mrs. Tiffany for about four months. During this time they occupied the second story of the house, and Mrs. Tiffany and her daughter occupied the ground floor. The doctor's office was in the wing. Mrs. Tiffany did her own housework, having no servant. Mrs. Tiffany, being in poor health, gave up housekeeping, whereupon plaintiff and her husband took the lower floor and kept house, and Mrs. Tiffany and her daughter the second floor, and they for a while took their meals at another place. Mrs. Metcalf also did her own housework, having no servant.

Plaintiff and her husband became estranged, and on September 17, 1891, executed articles of separation, in which it was recited that certain differences and difficulties had arisen between them of such magnitude that both recognized the fact that they could no longer live together as husband and wife. He agreed to give her the sum of $2,000 in cash and certain articles of household property, to be mutually agreed upon, in consideration whereof she agreed to release and discharge him from any and all obligations to support and maintain her during her natural life, and she further agreeing to release and surrender any rights she might have in any property owned by him. This agreement was carried out, and

the money paid to her.    Some time afterwards, but when
the record does not show, plaintiff instituted this suit.

There is no evidence to sustain the most damaging alle-
gations in the declaration.    It is not shown that defend-
ant ever wrote Mr. Metcalf a letter of any kind, that she
ever offered him a home or money, or induced him to
leave the plaintiff, or that she ever detained and harbored
him against plaintiff's will, or that she ever spoke dis-
paragingly of her to him.    There is no testimony or pre-
tense that any criminal relations existed between her
husband and defendant.    Plaintiff testified that, not long
after their marriage, she once saw her husband kiss the
defendant, but it was not shown that the act was invited
or even reciprocated by her.    Mrs. Tiffany testified that
Dr. Metcalf immediately apologized for the act, and this
is not denied.    Once her husband was very sick with in-
flammation of the bowels, so sick that he could not help
himself, and Mrs. Tiffany and plaintiff took care of him.
Fresh poultices were required to be applied every fifteen
minutes.    One evening the plaintiff lay down in an ad-
joining room, to rest till 12 o'clock, leaving Mrs. Tiffany
to take care of her husband.    It was understood what the
treatment was, and it did not seem to occur then to the
plaintiff that there was any indelicacy or impropriety in
leaving Mrs. Tiffany to attend her husband, with her-
self in the adjoining room, and the door open.    Plaintiff
testified that by that time she had become jealous, that
she got up about 12 o'clock from the lounge, went into
the room, and that Mrs. Tiffany was lying upon the bed.
They were not talking, and she saw no demonstration of
anything improper, except that she was lying upon the
bed.    This Mrs. Tiffany strenuously denied, and testified
that she was sitting in a chair by the bed.    Mrs. Metcalf
went to bed the next day, and, without protest or objec-
tion, left Mrs. Tiffany to take care of her husband.    These
are the only acts of impropriety which plaintiff noticed
during the time that they lived together, although she
was constantly on the watch for them.    Plaintiff testified

that from the summer of 1889 until September, 1891, she never saw anything wrong between them. Her state of mind will appear from the following portion of her testimony:

"From a month after I was married to the present time, I have had suspicion that there was something wrong between them. It has been ever present in my mind. In all my watchings, all that I have seen was the time when Mrs. Tiffany was carrying a pitcher of water, and the time when I saw her on the bed with the doctor when he was sick. I did not see her kiss him then."

They were on friendly terms during all this time, Mrs. Tiffany visiting plaintiff's friends, and they went to the opera house and other places together. No ill will was shown to exist on the part of the defendant towards plaintiff. Two other witnesses testified to two other instances where each said he saw Dr. Metcalf and the defendant kiss each other. These were unknown to her till some time after the separation. Mrs. Tiffany went riding with the doctor quite often when visiting his patients. This appears to have been by a common agreement or understanding between plaintiff and defendant, who was then in poor health. When plaintiff and her husband rode out together, defendant remained at home, and answered office calls. Upon this point she testified as follows:

"The practice of her riding out in the morning and I in the afternoon did not begin until after we went to housekeeping, which was about four months after our marriage. Before that time I usually went with him to look after the horse, and occasionally Mrs. Tiffany would go. She went mostly in the afternoon when she was housekeeping. It is a fact that my going and her going was according to our several duties in the house; that is, when I had some housekeeping affairs to look after, I did not go, but she went, and, when she had the same to look after, I went, but she did not go."

I deem it unnecessary to lengthen out this statement of facts by the testimony in detail. At the close of the

evidence, defendant's counsel requested the court to instruct the jury that plaintiff had failed to make out her case, and to direct a verdict for the defendant. I think the instruction should have been given. The record is barren of any evidence tending to show that the defendant harbored any ill will towards the plaintiff, or that she ever uttered a sentence showing any purpose to alienate her husband's affections or to cause a separation between them. There is no evidence of a single improper expression by her to or about Dr. Metcalf. A cause of action is left to inference from the acts above stated. If it be granted that there is evidence of any improper relations between them, it was incumbent upon the plaintiff to prove that the defendant was the aggressor rather than her husband. In such cases there is no presumption that the woman is the moving party, and primarily responsible for such conduct. The presumption is the other way. In a case where there was criminal intimacy, it was held that, in order to charge the defendant with alienating the husband's affections, it must appear that she was the seducer and enticer. *Churchill* v. *Lewis*, 17 Abb. N. C. 226. The record in this case will, in my judgment, be searched in vain to find any evidence from which it can fairly be found that she was the moving party. This disposal of the case renders it unnecessary to discuss the other questions raised.

I concur in the opinion of my Brother MONTGOMERY upon the question of damages.

Judgment should be reversed, and new trial ordered.

MONTGOMERY, J. There was evidence tending to show that defendant had alienated the affections of plaintiff's husband. It is true there was no direct evidence to the fact, but circumstances were shown from which the inferences drawn by the jury were justified.

I think, however, the court erred in the instructions relating to the measure of damages. By the sixth request, defendant asks the court to charge, in substance, that the

plaintiff having, by the agreement of separation, upon consideration paid and accepted, relinquished her claim upon her husband for support, she cannot in this action recover damages for the loss of support or property. This the court refused to do, and charged the jury that the receipt of $2,000 under the separation paper was not a bar to plaintiff's claim for damages from the defendant for the loss of her husband's support and maintenance, and the jury could only consider the same in reduction of the pecuniary loss growing out of such failure of support and maintenance. The plaintiff's case rested upon proof that the husband refused to live with her longer, and the testimony tends to show defendant's responsibility therefor. This proof, if sufficient to satisfy the jury, entitled her to recover for the loss of her husband's society and her means of support; but in establishing such right she also showed a right in herself to enforce, by appropriate proceedings, her claim to support and maintenance suitable to his station in life. Schouler, Husb. & Wife, § 72; *Sherrid* v. *Southwick*, 43 Mich. 515. This right to support was a continuing right, and, if the plaintiff had for all the years since the separation enforced it, it is clear she could not now recover from the defendant for the withdrawal of her means of support during this period. Should the case be different if, instead of standing on this right, she acquit him of the obligation on consideration? To hold that it should would open the door to collusion between the injured wife and her husband, and would give the wife a double remedy. She undoubtedly had a right to elect to proceed either against her husband or the defendant; but, having recovered or secured adequate compensation from her husband for all time by action, she could not again recover compensation from the defendant. I fail to see why her right should be greater if, in the absence of fraud, she accept a reasonable amount in settlement, as she may do. *Randall* v. *Randall*, 37 Mich. 563. See, also, *Eastland* v. *Burchell*,

3 Q. B. Div. 432. The plaintiff's recovery for withdrawal of support and maintenance must be limited by her right to support. When she has surrendered her right to support, how can it be said that the defendant has deprived her of it? It is not actionable to cause to be withheld from a person that to which he is no longer entitled. What is said above has no reference to such damages as the plaintiff is entitled to for the loss of the society of her husband. The case of *Izard* v. *Izard*, 14 Prob. Div. 45, cited to sustain the ruling of the circuit judge, does not decide the question. Action was by the husband, and the duty of support and maintenance was not involved. The real point for decision appears to be whether the husband has any action for adultery committed with the wife after deeds of separation. It was affirmed that he had.

The judgment should be reversed, and a new trial ordered.

Long and Hooker, JJ., concurred with Montgomery, J.

McGrath, C. J. (*dissenting*). I am not prepared to say that, by the agreement made with her husband after the relations between husband and wife had become strained, plaintiff is precluded from showing the difference between the amount accepted under those circumstances and the amount sufficient to maintain her as she had been maintained prior to the interruption of those relations. The character and extent of the support contributed by a husband to his wife are not determined by the rule which would be applicable in the settlement of the question of alimony in a divorce case; nor should plaintiff be concluded by a settlement, as between her husband and herself, forced or suggested by the situation into which the parties had been brought by defendant's misconduct.