## Willey v. Howell.

(Decided September 29, 1914.)

### Appeal from Hickman Circuit Court.

1. Husband and Wife—Action for Alienation of Affections—Evidence. —In an action by the husband against the father of his wife to recover damages for alienating the affections of his wife, the declarations and conduct of the wife may be admitted in evidence for the purpose of showing that she was wrongfully persuaded or influenced by her father to leave her husband, and likewise for the purpose of showing that she left him voluntarily, although the declarations were made to third persons.

2. Husband and Wife—Alienation of Affections—Evidence.—In actions for alienation of affections any pertinent evidence tending to show the state of mind and feeling of the person whose affections it is charged were alienated, and the influences that operated upon the mind of such person, inducing him to take the action he did, may be admitted as evidence.

3. Husband and Wife—Alienation of Affections—Evidence.—Where the father of the wife was sued by the husband for alienating the affections of his wife, a letter written before the final separation by the wife to a third party stating her purpose to leave her husband, was competent.

BENNETT, ROBBINS & ROBBINS and ROBBINS & ROBBINS for appellant.

R. L. SMITH and J. D. VIA for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellee, Howell, brought this action against the appellant, Willey, to recover damages on the ground that the appellant had wrongfully and maliciously alienated the affections of his wife and persuaded and influenced her to abandon him.

On a trial of the case there was a verdict and judgment in favor of the appellee for $1,500. A reversal of the judgment is asked for reasons that will be noticed in the course of the opinion. Before, however, taking up the assignment of errors, it will be well to give a brief history of the case and so much of the evidence as appears to be necessary to illustrate the issues.

In May, 1910, the appellee married the daughter of the appellant, and soon afterwards they began keeping house a short distance from the home of the appellant.

They lived together until January, 1913, when the wife of appellee, taking with her the two children that were born of the marriage, left his home and took up her residence with the appellant. A very short while afterwards this suit was brought. It also appears in the record, although in an incidental way, that the appellee brought a slander suit against the appellant and that the wife of appellee brought a suit against him for divorce and alimony.

It seems that all of these people lived on perfectly agreeable and friendly terms until some time in November, 1911, when a little difference came up between the appellant and appellee, growing out of a business transaction. After this matters grew worse between them, first one trifling thing and then another stimulating the animosity that soon culminated in a bitter estrangement. Finally, in December, 1912, the appellant —as shown by the evidence of appellee—accused the appellee of having a loathsome disease, and said that he had been trying for several months to get his wife to leave him. A few weeks after this another wordy altercation took place between appellant and appellee, and there is evidence to the effect that appellant insisted that his daughter leave appellee and go to his home, but she did not go at this time. A few days afterwards, however, the appellant came to the house of appellee, and a conversation that took place between appellant, appellee and the wife of appellee, in which threats of suits and other disturbing matters were brought up, ended in the wife of appellee and the children going to the home of appellant.

In short, the evidence for appellee tended to show that he and his wife were living happily together until their pleasant relations were broken up by the appellant, who not only falsely charged appellee with having a loathsome disease but saying that he had contracted it from his wife. It further appeared from his evidence that the appellant wrongfully persuaded his wife to leave him.

The evidence for appellant, in substance, was that some time in December, 1912, he learned from the wife of appellee that appellee had a loathsome disease and that appellee charged that he had contracted the disease from her. He also related, at some length, conversations he had with his daughter concerning the trouble

with her husband, all of which tended to show that appellee treated his wife badly and made cruel accusations against her virtue. He said he did not make any effort to persuade his daughter to leave appellee, and that when she had made up her own mind that she would not live with him longer, he told her to take her children and come to his home. He admits that he charged appellee with having the disease, and says that he believed he was afflicted with it. And his evidence tended to show that he did not do anything to contribute to the bad relations between appellee and his wife, or to bring about a separation between them, until after his daughter told him that appellee had the disease and accused her of giving it to him, and after this, when his daughter had made up her own mind not to live with appellee, he took her and the children to his home.

There is in the record a great deal of evidence, expert and otherwise, conducing to show that appellee was not afflicted with a loathsome disease, and other evidence to the effect that he was. But whether he was or not was really not so material a question in the case except in so far as it served to illustrate the real issue, which was whether the wife of appellee left his home of her own accord or was wrongfully persuaded and influenced to do so by her father.

The first error complained of is that appellee was permitted to relate conversations had with his wife in the absence of appellant. Although this error in the admission of evidence was cured by an instruction of the court, we might add that it was not competent for appellee to relate any conversations that took place between himself and his wife in the absence of appellant or some other person who might testify to what occurred. Leucht v. Leucht, 129 Ky., 700. It would, however, have been competent to admit testimony of third persons who heard conversations between appellee and his wife illustrating the state of feeling between them and pertinent to show whether she left him voluntarily or was persuaded to leave him by appellant.

The chief ground relied on for reversal is the ruling of the trial judge in excluding from the jury a letter written on December 30th, 1912, by the wife of appellee to her mother, the wife of appellant. The appellant, during his testimony, was shown a letter which he said had been given to him by his daughter, the wife of ap-

pellee, to take to her mother. And he further testified that the letter was in the handwriting of his daughter and that he was acquainted with its contents. The letter charged, in substance, that the appellee had been guilty of mistreatment and cruel conduct towards his wife for almost a year previous to the date of the letter, and that his conduct had become so intolerable that she had made up her mind to leave him as soon as she was able to do so and had so told him.

We think this letter was competent evidence for appellant, and its exclusion was prejudicial error. The real issue in this case was, did appellant wrongfully and maliciously persuade his daughter to abandon appellee, or did his daughter, induced by the misconduct of appellee, voluntarily leave him? For the purpose of illustrating this issue it was competent for the appellant to prove declarations, written or oral, made by the wife of appellee that tended to show her state of mind and feeling towards her husband and her intentions in respect to remaining with or leaving him. Indeed, any relevant circumstances that might serve to show her state of mind and intention were competent. Nor is it material to the competency of evidence of this character whether it was brought to the notice of appellant or not. For example, it would have been admissible in behalf of appellant to prove by third parties declarations and statements of the wife of appellee showing her state of mind and her intention, although these statements and declarations were unknown to appellant. Likewise it would have been admissible in behalf of appellee to prove by third persons, from personal knowledge or from information received from the wife of appellee, the agreeable relations that existed between appellee and his wife. Leucht v. Leucht, 129 Ky., 700.

We had before us in Scott v. O'Brien, 129 Ky., 1, a question substantially like this. In that case Virginia O'Brien brought an action against Florence Scott to recover damages for the alienation by the latter of her husband's affections. The defense for Mrs. Scott was that O'Brien voluntarily left his wife without being influenced or persuaded by her so to do, and with a view of presenting this defense, she offered to introduce letters from O'Brien and to testify to his conduct and conversations with her prior to the time he abandoned his wife. And it was ruled that this evidence was competent

as tending to show whether the conduct of O'Brien was voluntary on his part or the result of the persuasion or influence of Mrs. Scott.

The only difference between that case and this consists in the fact that in the O'Brien case the declarations offered were made directly to the defendant, Mrs. Scott, while here the evidence offered was in the form of a letter written to a third person not a party to this suit. But the competency of evidence of this character does not depend on the circumstances that its declarations were made directly to the party sought to be charged with the alienation. The appellant testified to conversations had with his daughter showing her purpose to leave her husband on account of his misconduct, and these conversations were of course competent, as was directly decided in the O'Brien case, but there is no reason why third persons should not also testify to declarations of the wife manifesting her purpose to leave her husband for causes entirely independent of the appellant. Admissibility of evidence of this character rests on the ground that it shows the reasons that influenced the wife to take the action she did and that she was not influenced or persuaded so to do by the person charged with the alienation. For example, suppose that the wife of appellee had said to "A" before the final separation that her husband had made cruel charges against her virtue and had otherwise behaved in such a manner that she could not live with him, and that she intended to leave her home and go to her parents or some other place. Clearly it would have been competent to prove in behalf of appellant these declarations by the person to whom the wife had made them.

It is, however, insisted by counsel for appellee that if this letter was competent, its exclusion was not prejudicial, because appellant was permitted to testify to statements made to him by his daughter in substance the same as the statements contained in the letter. But this letter purported to be, and we must assume was, in the handwriting of the daughter. It was written by her before the final separation took place and while she was living with her husband, and furnished, if true, the most convincing reasons why she intended to leave her husband and go to the home of her parents. That this letter written by her would have been much more effective evidence of the causes that were operating upon

her mind to induce her to take the step she did than were the statements by the appellant as to what the daughter told him, is, we think, not open to question. It may be, as said by counsel for appellee, that this letter was prepared long after the separation took place, for the purpose of helping in the defense of this suit. But this argument goes to the weight of the letter as evidence and not to its competency.

For the error in refusing to admit this letter, the judgment is reversed, with directions for a new trial not inconsistent with this opinion.