PATTERSON *v.* HILL.

1. HUSBAND AND WIFE—ALIENATION OF AFFECTIONS—AID AND SUP-
   PORT—SEPARATION AGREEMENT.
   In an action for damages for the alienation of the wife's
   affections, ·a separation agreement between plaintiff and
   his wife, signed before commencement of action, releasing
   all claims he might have against her by reason of the mar-
   riage relation, including any demand for aid or support,
   *held*, to bar recovery by plaintiff for loss of the wife's aid
   and support, but not for the loss of her love and affection.

2. SAME—TRIAL—INSTRUCTIONS.
   In said action it was error for the trial court to refuse to
   instruct the jury that plaintiff could not recover for any-
   thing that he had released his wife from in said agree-
   ment.

3. SAME—TRIAL—INSTRUCTIONS—ISSUES SUBMITTED.
   The claim of plaintiff's counsel that the only question sub-
   mitted to the jury was whether plaintiff was entitled to
   damages by reason of the loss of the affections of the
   wife cannot be sustained, in view of the following lan-
   guage in the charge: "Some testimony has been offered
   as to the value of aid and assistance * * * which he
   has been deprived of. *. * * This, of course, you will
   consider, * * * providing you get to the point where
   you shall consider the damage in the case."

4. WITNESSES—HUSBAND AND WIFE—DIVORCED WIFE COMPETENT.
   In an action by a husband for the alienation of the wife's
   affections, adultery not being charged, the divorced wife
   was a competent witness, except as to confidential com-
   munications between them during coverture, without the
   husband's consent. 3 Comp. Laws 1915, § 12555.

5. TRIAL—INSTRUCTIONS—CONTRADICTION. ·
   In an action by a husband for the alienation of the wife's
   affections, an instruction by the trial judge that it was
   not the theory of either party that there was any estrange-
   ment between the plaintiff and his wife prior to the time
   he was taken to the hospital, followed by another instruc-

On divorce and separation as affecting action for alienation of
affections or criminal conversation, see note in 46 L. R. A.
(N. S.) 1084.

tion that at that date the defendant claimed that the love and affection of the wife had been wholly and· fully alienated, *held*, contradictory and should be avoided.

Error to Mecosta; Barton (Joseph), J. Submitted October 8, 1920. (Docket No. 68.) Decided December 21, 1920.

Case by Albert A. Patterson against Andrew Hill for the alienation of the affections of plaintiff's wife. Judgment for plaintiff. Defendant brings error. Reversed.

*Cogger & Dumon* and *A. A. Worcester,* for appellant.

*Arthur J. Butler,* for appellee.

STONE, J. This is an action on the case for damages for the alleged alienation of the affections of the plaintiff's wife by the defendant. The declaration which was filed on March 4, 1919, contains but one count, and alleges in substance that the plaintiff was, to wit, on the 5th day of May, 1915, in full possession of the affections, comfort, fellowship, aid and assistance of his wife, Ellen Patterson, and that the defendant wrongfully and wickedly intending to injure the plaintiff, and to alienate and destroy the affections of plaintiff's wife for him on, to wit, the 5th day of May, 1915, and on divers other days and times between that day and the 28th day of February, 1919, did wrongfully and wickedly carry on a secret correspondence with the said Ellen Patterson and hold various clandestine meetings with her, and did give her various presents and things of value, and by various other arts and devices the defendant did wrongfully and wickedly alienate and destroy the affection of the said Ellen Patterson for the plaintiff, and induced and persuaded her to leave the plaintiff's home and refuse

to longer live with him, and to refuse to longer give her affection, comfort, fellowship, society, aid and assistance, which the plaintiff had had possession of, and enjoyed, before the commencement of said wrongful acts by the defendant. It was alleged that by means thereof the plaintiff had wholly lost the affection, comfort, fellowship, society, aid and assistance of his said wife, and was caused to suffer great mental anguish and distress, and great annoyance and suffering in his household, and was humiliated among his relatives, neighbors and acquaintances.

Under the plea of the general issue, by his second amended notice defendant alleged that before the commencement of this suit, and on, to wit, the 13th day of July, 1918, the plaintiff filed in the circuit court for the county of Mecosta, in chancery, his bill of complaint wherein Ellen Patterson, his then wife, was defendant, praying for a decree of divorce for various reasons therein stated, and that on the 28th day of February, 1919, said court rendered a decree in said cause dissolving the marriage between the said parties; and that the defendant would further prove and insist in his defense that on or about the 18th of February, 1918, the plaintiff herein entered into a certain agreement with his then wife, Ellen Patterson, which agreement was as follows:

"Whereas, Albert A. Patterson and Ellen Patterson, husband and wife, of the village of Chippewa Lake, county of Mecosta and State of Michigan, have been separated and have for some time been living separate and apart from each other; and

"Whereas, said parties have agreed upon an amicable settlement of their property affairs;

"Now, therefore, in consideration of said settlement and the payment to her of the sum of $75 and her discharge as guardian of the said Albert A. Patterson, and the execution and delivery by him to her of a receipt in full of all dues and demands to date which he has or might have against his said wife, and the

delivery to her of certain personal property to be hereafter selected by Messrs. Butler & Everett, attorneys for the said Albert A. Patterson, and Messrs. Cogger & Cogger, attorneys for the said Ellen Patterson, and the execution and delivery to her by the said Albert A. Patterson of a quitclaim deed of the following described property, to wit, lots 10 and 11, block 4, and the east one-half of lot 5, block 7, of the village of Chippewa Lake, Mecosta county, Michigan, and the further consideration of the faithful performance of the terms and conditions of this agreement in letter and spirit by the said parties hereto, the said Ellen Patterson hereby releases and discharges the said Albert A. Patterson from any and all claim or claims which she has or might have against the said Albert A. Patterson by reason of the marriage relation existing between them, including dower, alimony, maintenance, support, costs, charges and expenses of every kind, nature and description from and after this date.

"In consideration of the delivery to him, the said Albert A. Patterson, of certain personal property which is to be hereinafter selected and turned over to him by Messrs. Butler & Everett, attorneys for the said Albert A. Patterson, and Cogger & Cogger, attorneys for the said Ellen Patterson, the said Albert A. Patterson hereby releases the said Ellen Patterson of any and all claim or claims of every kind, nature and description which he has or may have against her by reason of the marriage relation existing between them, including the right to live with his said wife or to demand any aid or support from her; and the parties hereto hereby release each other from in any way regulating the conduct of the other, and they also agree not to interfere or molest each other or to speak to each other or to interfere with each other's personal liberty, and said parties to this agreement hereby agree not to come onto any property owned by each other, or to speak derogatory of each other's character from this date on.

"In witness whereof the parties hereto have executed this agreement in duplicate this 18th day of February, A. D. 1918.

"ALBERT A. PATTERSON.
"Mrs. ELLEN PATTERSON."

The plaintiff and his wife were residents of the village of Chippewa Lake, Mecosta county. He had practiced medicine and conducted a drug store there for 39 years. The marriage took place in 1899, and they continued to live together until the month of May, 1915. They had one child, a son, William Lloyd Patterson, who at the time of the trial of the instant case was 19 years of age. It appears uncontradicted that the plaintiff was addicted to the excessive use of intoxicating liquors. Some time in the spring of 1915 he had delirium tremens and attempted suicide. He was adjudged insane on the 3d day of May, 1915, and committed to the State hospital at Traverse City. He was released from the State hospital on or about the 29th of January, 1918, and immediately upon his return made application to the probate court to be adjudged sane, and on the 18th of February, 1918, he was adjudged sane by the probate court of that county; and it will be noted that on the same day the agreement heretofore set forth was entered into.

The defendant was a farmer, whose farm was located a short distance from the village of Chippewa Lake. He had had some trouble with his wife over property matters, and on or about January 17, 1917, went to Chippewa Lake and boarded at a hotel, which at that time was conducted by the mother of Mrs. Patterson, a Mrs. Wylie, who died in the month of August, 1917. After her mother's death Mrs. Patterson conducted the hotel and the defendant continued to board there.

Upon the trial it was the claim of the plaintiff that he was in full possession of the love, affection, sympathy, aid and assistance of his wife up to the time he was adjudged insane and sent to the State hospital; that during the time he was in the State hospital, due to the attentions of the defendant, he lost her affection, sympathy, aid, assistance, etc. It should be

noted that there is no charge of adultery in the case.

It was the claim of the defendant upon the trial that he was not guilty of any act or conduct which led to any alienation of the affections of the plaintiff's wife; that he was merely a boarder at the hotel; that he had no intention of alienating the affections of Mrs. Patterson from her husband and did not do so; and, further, that the attitude of Mrs. Patterson toward her husband was caused by the conduct of the plaintiff toward her; that for several years prior to his commitment to the State hospital she had lived in fear of him; that his own habits of life, his almost constant drunken and besotted condition, and his treatment of her, had destroyed the love and affection which the plaintiff claimed he was entitled to, and which he alleged he was in possession of up until May, 1915. It was also claimed that said agreement was a bar to recovery.

The testimony is quite voluminous and we shall quote but little of it. The plaintiff and his wife did not resume marital relations after his return from Traverse City. Upon the subject of aid and assistance we quote from the testimony of the plaintiff on his direct-examination, as follows:

"By reason of the associations of my wife with Mr. Hill I was humiliated among my relatives, neighbors and acquaintances. By reason of the conditions I have detailed here with reference to the associations of Mr. Hill and my wife, I lost her comfort, her fellowship, society, aid and assistance as a wife and assistant in my business, when she refused to longer live with me. I couldn't put a value on my wife's services as a wife. I could hire some one to do partially the work she was doing, but not in an equal manner, because she was pretty thoroughly acquainted with the stuff she had to handle, and had learned considerable about the business. I would say I couldn't have hired help equal to her line of help in that line alone, short of ten dollars a week.

*"Defendant's Counsel:* I object to that as incompetent.

*"The Court:* I think it is covered by the clause, 'aid and assistance.'

*"Defendant's Counsel:* Yes, but the question isn't what he could hire help for.

*"The Court:* Well, it seems to be the only method of replacing lost aid, what it can be replaced for. It is only his estimate.

"(Witness continuing:) Taking into consideration the help of my wife as an assistant in the store and as a servant in the house, in my judgment a fair value of her services would be fourteen dollars a week."

The pleading in the divorce case and the decree were received in evidence upon the trial without objection, as was also the agreement of February 18, 1918; and upon the trial it was the claim of the defendant that by said agreement the plaintiff had released his wife from all those things for which he was claiming damage in the instant suit.

On the trial, which took place in September, 1919, Mrs. Ellen Patterson, the former wife of the plaintiff, was offered by the defendant as a witness. Counsel for plaintiff objected to her giving testimony covering any period of the time in which she was the wife of plaintiff. After an extended argument the court ruled that Mrs. Patterson was incompetent to give testimony for any purpose in the suit, on the ground that she had been the wife of the plaintiff, and her offered testimony was excluded against the objection of defendant's counsel.

At the conclusion of the plaintiff's evidence a motion was made by defendant for a directed verdict of no cause of action, based largely upon the agreement and on the ruling excluding the testimony of Mrs. Patterson. The court withheld its ruling on the motion and announced that it might be renewed at the close of the defense, which course was followed. The court again withheld its decision and submitted the case to

the jury. The jury returned a verdict for the plaintiff and assessed his damage at the sum of $500. A motion for judgment *non obstante veredicto* was then entered, and argued and denied by the court, and judgment upon the verdict was duly entered.

Defendant had requested the court to charge the jury:

(1) That their verdict should be no cause of action.

(6) That under the agreement of the 18th of February, 1918, there could be no recovery, upon the authority of *Metcalf* v. *Tiffany*, 106 Mich. 504.

(7) "I charge you that the plaintiff cannot recover from the defendant for anything that he released Mrs. Patterson from in the agreement between the plaintiff and his wife February 18, 1918."

All these requests to charge were refused, and the case was submitted to the jury in a lengthy charge, in the course of which the court instructed the jury, among other things, as follows:

"No direct testimony has been offered as to the value of the affection, comfort, fellowship, society, mental anguish and distress. Some testimony has been offered as to the value of aid and assistance which the doctor now requires, which he by reason of his claim, at least, has been deprived of, the aid and assistance of his wife in his household and in his business. This, of course, you will consider, and give such weight to the testimony as you think it is entitled to, providing you get to the point where you shall consider the damage in the case. * * *

"Now, as to the theory of the plaintiff and the theory of the defendant: It is urged by the attorneys for the plaintiff and the theory of the plaintiff is that on May 5, 1915, when the plaintiff was (taken) away to the hospital at Traverse City, he took with him the full confidence, love and affection of his spouse, Ellen Patterson, and that subsequently, and before his return in January, 1918, Andrew Hill, the defendant herein, wrongfully and wickedly contriving and intending to, did deprive him, the plaintiff, of the affection, comfort, fellowship and society of his wife.

"Now, the burden is upon the plaintiff to prove this by a preponderance of the evidence, which I have defined. In other words, you will not consider in this case that there was to any extent whatsoever an estrangement between the doctor and his wife prior to that time, which existed on May 5, 1915. It is not the theory of the plaintiff, it is not the theory of the defense, neither one of them claims there was an estrangement, but that on the occasion when he went away he was in full possession of the love and affection and confidence of his wife, and from that time on matters occurred at the instance of the defendant herein, whereby upon his return he had wholly lost and had been alienated from the love and affection to which he was entitled.     *     *     *

"It is the theory of the defendant that on May 5, 1915, when the doctor was adjudged mentally deranged and committed to the hospital for the insane at Traverse City, that at that time the love and affection of his spouse, Ellen Patterson, had been wholly and fully alienated; that he was not in possession of it, nor any portion of it; that she at that time had no love or affection for him, but was in a condition of power only by reason of fear of the doctor and what the consequences might be if she failed to observe his order.     Now these are the theories of the two parties."

It is probable that the word "power" in the language just quoted is a typographical error.

The case is brought here for review by the defendant, and there are 27 assignments of error; many of them relating to the rulings of the court upon the reception or rejection of testimony. The questions which we discuss are properly raised by the assignments of error.

Upon the question of the effect of the agreement of February 18, 1918, we are of the opinion that as to so much of it as relates to the aid and assistance of the wife to the husband the rule laid down in the *Metcalf Case* is controlling. In that case by articles of separation between the wife and the husband she had released the husband from all obligation to support and

maintain her, and it was held that she could not, in an action for the alienation of the husband's affections, recover damages for the loss of such support. We do not think, however, that it bars all right of recovery in the case. For the loss of the love and affection of his wife, if any, by defendant's conduct, we think the plaintiff was not precluded from the recovery of damages. We do think, however, that the court erred in not giving the 7th request to charge.

One claim of the plaintiff's attorneys is stated in the following language:

"The case at bar is also distinguishable from the case of *Metcalf* v. *Tiffany*, for the reason that the plaintiff does not and did not, on the trial of the case in the lower court, ask any damages for the aid and assistance of his former wife, Ellen Patterson, notwithstanding the fact that the declaration states that he had wholly lost such aid and assistance, and the only question that was submitted to the jury by the circuit judge was the question as to whether or not the plaintiff was entitled to any damages by reason of the loss of affection of his said wife."

A reference to the testimony of the plaintiff and to the charge of the court which we have here quoted above will show that counsel are here mistaken in their claim; and to demonstrate that no language similar to the 7th request was given to the jury, but rather the contrary, we call attention to the quoted language of the court in its charge, beginning with the words:

"Some testimony has been offered as to the value of aid and assistance which the doctor now requires, which he by reason of his claim, at least, has been deprived of, the aid and assistance of his wife in his household or in his business. This, of course, you will consider, and give such weight to the testimony as you think it is entitled to, providing you get to the point where you shall consider the damage in the case."

We think in view of the 7th request to charge that there was here reversible error.

This brings us to assignment No. 10, which involves the competency of the testimony of Ellen Patterson, the former wife of plaintiff. It will be noted that the plaintiff and his wife were divorced on the 28th day of February, 1919, and that this suit was instituted on the 4th day of March, 1919, less than a week thereafter, and that at the time of the trial of this cause Ellen Patterson was not the wife of the plaintiff.

When Mrs. Patterson was offered as a witness plaintiff's attorneys objected to her giving testimony covering any period of time in which she was the wife of plaintiff. The statute relied upon and discussed by court and counsel is section 12555, 3 Comp. Laws 1915. The pertinent clauses are as follows:

"A husband shall not be examined as a witness for or against his wife without her consent; nor a wife for or against her husband without his consent. * * * Nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communications made by one to the other during the marriage."

Counsel for appellant cite and quote in support of their contention from the following case: *Hagerman* v. *Wigent*, 108 Mich. 192. In that case Justice MONT-GOMERY, speaking for this court, and referring to the last clause above quoted, said:

"This provision is but declaratory of the common law. The word 'communication' must be understood as having been used in the sense which had attached to it by its common use in the same construction. At the common law, testimony of the husband or wife was admissible, after coverture terminated either by divorce or death of the other spouse, in all cases where the facts sought to be proven did not fall within the inhibition against the disclosure of confidential communications between husband and wife made during coverture."

We invite attention to the language which follows the above.

Counsel for appellant also cite *Ward* v. *Oliver*, 129 Mich. 300. The head-note to that case reads as follows:

"Under the statute providing that a husband shall not be examined as a witness for or against his wife without her consent, nor shall either, during the marriage or afterwards, without the consent of both, be examined as to any communication made by one to the other during the marriage, a surviving husband is not disqualified, in a suit to set aside a deed from him to his wife as in fraud of creditors, from testifying to dealings between himself and wife, showing that the deed was made in payment of a debt due for borrowed money; since the former clause of the statute applies only *during* coverture, and the latter only to communications recognized in the law as *confidential.*"

And, further, see *In re Thayer's Estate*, 188 Mich. 261, 268; *Barras* v. *Barras*, 192 Mich. 584, 591.

Upon this branch of the case counsel for plaintiff call attention to *People* v. *Bowen*, 165 Mich. 231, and *Maynard* v. *Vinton*, 59 Mich. 139, 152 (60 Am. Rep. 276). An examination of these cases will show that in *People* v. *Bowen* the court was speaking of "confidential communications"; and the court there well said that as to those, "the privilege secured by this statute survives separation, divorce and death"; and the same may be said of *Maynard* v. *Vinton*.

The latest case upon this subject is that of *Hendrickson* v. *Harry*, 200 Mich. 41. That was a suit brought by the plaintiff for the alienation of his wife's affections, and, as here, no adultery was charged. Prior to the beginning of the suit there had been a divorce. There having been an error in the record relating to the date of the divorce, the record was remanded and a rehearing granted. In finally disposing of the case, after quoting the statute, Chief Justice OSTRANDER, speaking for the court, said:

"According to the letter of the law the witness Hilma Hendrickson was a competent witness for the

defendant except that she could not testify to communications made by herself to her husband and by him to her during their marriage, this action being treated by counsel for both parties as not being one instituted in consequence of adultery. It is said for plaintiff, appellee, that if she is permitted to answer as to her feeling towards and affection for him, the real reason for her state of mind at the time must be developed by cross-examination, which it is obvious cannot be conducted without inquiry into the domestic relations; that

" 'Had she been permitted to testify that at said time she had lost her affection for her husband, the question would at once arise as to why she had lost her affection for him. Had she been permitted to testify that she lost her affection for her husband on account of his acts of physical violence against her, the cause of such acts of physical violence would necessarily have to be inquired into. In any event, it would be impossible to cross-examine the witness so as to show the real reason for her loss of affection for the plaintiff, without going into their marriage relation.'

"It must be held that the divorced wife was a competent witness, generally, for the defendant—and for that matter for the plaintiff—and it appearing that no objection was made that the offer to prove was too broad, no suggestion made that it should be more specific, it is held that the court should have permitted the examination to proceed until testimony was called for which she was not competent to give. What questions may be asked her cannot be anticipated, nor can this court upon this record lay down any rules for the trial court beyond the one above stated. The witness will be subject to cross-examination like any other witness, and her credibility and the weight of her testimony will be for the jury."

We are of the opinion that when the marriage relation has been terminated, the statute prohibits the testimony of either spouse against the other only to the extent of privileged communications. That Mrs. Patterson was a competent witness in many matters pertinent to the issue is very evident. It seems unreasonable to hold that she might not testify as to many mat-

ters, including her conduct and relationship with the defendant; and as was said by Chief Justice OSTRAN-DER:

"What questions may be asked her cannot be anticipated, nor can this court upon this record lay down any rules for the trial court beyond the one above stated."

We think that in ruling that the witness Mrs. Patterson could not testify in the case the trial court permitted prejudicial error.

As the case must go back for a new trial, we call attention to the contradictory statements in the charge, so that the same may not occur again. It will be perceived that after the court instructed the jury that it was not the theory of either party that there was any estrangement between the doctor and his wife prior to the time he was taken to the hospital, the court proceeded to charge the jury later on that at that date the defendant claimed that the love and affection of the wife, Ellen Patterson, had been wholly and fully alienated; that he was not in possession of it, nor any portion of it, that she at that time had no love and affection for him, but was in the condition of "power" only by reason of fear, etc. It seems to us that these are contradictory statements, and as such should be avoided in the charge upon another trial.

We find no reversible error in the record relating to the rulings of the court in the admission or rejection of testimony other than we have pointed out. The judgment of the circuit court, for the reasons stated, is reversed and a new trial granted, with costs to appellant.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.