(No. 5317. December 18, 1930.)

ANNA D. JOHNSON, Respondent, v. ELSIE SCHMIDT RICHARDS, Appellant.

[294 Pac. 507.]

Frawley & Barnes and F. A. Hagelin, for Appellant.

Martin & Martin, for Respondent.

VARIAN, J.—Action by a wife for alienation of husband's affections, alleging adultery in aggravation of damages. The complaint alleged marriage of plaintiff in Nebraska in 1901; that she and her husband came to Boise, Idaho, in 1913, where they lived and cohabited together happily as husband and wife until October, 1922; that about said last-named date the defendant conceived the desire and design of wrongfully contriving and intending to injure plaintiff and deprive her of the comfort, society, assistance, and support of her husband by maliciously enticing him away from her and their residence; that defendant persuaded the husband to desert and abandon plaintiff, and stay with defendant, on or about September 11, 1926, at her home where they carnally knew each other; that in April, 1927, defendant, for the purpose of depriving plaintiff of the comfort, society, assistance, and support of plaintff's said hus-

band, enticed him to go with her to Seattle and Tacoma in the state of Washington, where they illegally lived and cohabited together and carnally knew each other as husband and wife. Defendant denied the allegations of the complaint, and the jury found for plaintiff. The court denied defendant's motion for a new trial, and she appeals from the judgment and the order denying her motion for a new trial.

Many assignments of error go to the court's sustaining objection to questions propounded to respondent on cross-examination concerning continuous quarrels and marital difficulties between her and her husband occurring before October, 1922, the date fixed by respondent when their marital happiness was interrupted by defendant, the beginning of their unhappiness. Respondent testified that until that time she and her husband had a happy home, etc. It was proper to interrogate respondent concerning any quarrels or difficulties had with her husband during the period mentioned. (*Smith v. Sheffield,* 58 Utah, 77, 197 Pac. 605.)

Four assignments of error involve questions asked respondent on cross-examination as to quarrels and differences occurring between October, 1922, and September 11, 1926, the date respondent's husband left her the first time. Respondent testified on direct examination that she and her husband were very happy until interrupted in October, 1922, by appellant. These questions all tended to test out respondent's general statement as to conditions she testified to. Cross-examination of a party testifying in his own behalf "need not be confined so strictly to matters brought out on direct as in the case of other witnesses," and "a greater latitude is undoubtedly permissible." (3 Ency. of Evidence, p. 843.) This court has said that "a wide latitude should be allowed in the cross-examination of parties to the action." (*Just v. Idaho Canal & Imp. Co.,* 16 Ida. 639 (663), 33 Am. St. 140, 102 Pac. 381. See, also, *Merrihew v. Goodspeed,* 102 Vt. 206, 66 A. L. R. 1109, 147 Atl. 346; *Kimsey v. Rogers,* 166 Ga. 176, 142 S. E. 667.) It is possible that the affections of respondent's husband for her had been alienated after October, 1922, from other causes than the interference

of appellant, upon which the proposed cross-examination might shed some light. (See *Phelps v. Bergers,* 92 Neb. 851, 139 N. W. 632 (634).) The court erred in sustaining objections to this cross-examination.

Three assignments of error challenge the court's sustaining objections to questions asked respondent on cross-examination as to specific quarrels and marital differences occurring between respondent and her husband prior to October, 1922. The court erred in these rulings.

The court permitted appellant's counsel to cross-examine respondent as to threats alleged to have been made by her against her husband during the years 1919 and 1920, when the parties resided at Boise. She testified that during her residence in Boise, and during the year 1920, she never had a pistol in her possession; denied that a few days before the separation she had a gun in her possession and threatened to kill her husband; denied that in 1920 she had a shotgun and pointed it at and threatened to kill her husband. Appellant's counsel then asked if at any time during her residence in Boise she had a shotgun in her possession and threatened to kill her husband, to which question the court sustained an objection. Respondent also testified that during the time they lived at Boise, she never had any trouble with her husband over mail forwarded to Boise from his parents in Nebraska. Thereafter on motion, the court struck the answer to the further question, "You never had any trouble of that kind?" The court did not err since the witness had already answered these questions in effect.

Objections were properly sustained to the following questions propounded to respondent on cross-examination: "You never went there and complained and reprimanded her (Nellie Stuart) in any way for her conduct toward your husband?" and "During that time or prior thereto (1925), didn't your husband request you to leave him and go east?" and questions asking the witness if she did not reprimand a certain Mrs. Venable "for being responsible" for the trouble between respondent and her husband, and if she had not frequently complained to persons of her husband's keeping

company with other women. These four questions were not properly framed as impeaching questions and were not proper cross-examination, however pertinent their subject matter might become on defendant's case in chief.

The court properly sustained an objection to the following question asked respondent on cross-examination: "Isn't it a fact that by reason of the financial condition of your husband and the troubles over your extravagances, that suits were instituted against him here?" The question assumed there was trouble over respondent's extravagances, as to which there was no evidence. It was duplicitous and not proper cross-examination. For like reasons the court did not err in sustaining objections to the following question: "At that time and prior thereto, you had serious quarrels covering a long period of time, by reason of and on account of your attempting to poison him, didn't you?"

The court instructed the jury that respondent, if entitled to recover in the action, was entitled to damages for "loss of the affection, consortium, society, aid, comfort, and support of her husband." An agreement, entered into by respondent and her husband on April 11, 1927, purporting to settle their mutual property rights, was denied admission in evidence. The integrity or *bona fides* of the agreement, and its fairness, are not attacked. It provided that the husband should convey to respondent as her portion of "all property now owned by the parties hereto, whether separate or community," certain real estate, household goods, and an automobile, to become her separate property, and that the husband should pay to respondent $50 per month for the support of the minor child of the parties. The contract further provided:

"It is understood and agreed that first party (the husband) shall have as his sole and separate property, all other property, whether real or personal, and whether separate or community, not herein set over to second party (plaintiff), including the rents, issues and profits thereof, and his personal earnings, except as expressly in this contract otherwise provided. . . . .

"It is mutually agreed between the parties hereto that this agreement and indenture is made with the intention of and for the purpose of settling forever all the rights between the said husband and wife in regard to their property or the property of either of them, whether community or separate, and it is agreed that neither of them will ever make any claim upon the other of any kind or nature whatsoever, dependent upon or growing out of the marriage relation which now exists between them. . . . .

"It is understood and agreed that the foregoing division of the property of the parties hereto is given and accepted by each party in full satisfaction of the other party's obligation to contribute to his or her support."

The court erred in excluding this agreement from the record, and in instructing the jury that loss of support was an element of damage in this case. Respondent's right to support from her husband was merged in the obligation assumed under this contract, and she could no longer look to him for support or maintenance while the contract was in force. It did not affect her right to her husband's affection, comfort, society, and protection, nor release appellant from liability if she deprived her of them. (30 C. J., p. 1151, sec. 1027; *Patterson v. Hill*, 212 Mich. 635, 180 N. W. 352; *Mohn v. Tingley*, 191 Cal. 470, 217 Pac. 733; *Annarina v. Boland*, 136 Md. 365, 111 Atl. 84.) It is not essential to the maintenance of the action that respondent should have suffered any pecuniary loss whatever (2 Schouler on Marriage, Divorce, Separation and Domestic Relations, 6th ed., p. 1591; *Woodhouse v. Woodhouse*, 99 Vt. 91, 130 Atl. 758), since loss of affection is the gist of the action (*Annarina v. Boland, supra*). It follows that the court should have admitted the agreement and instructed the jury on this point substantially as contained in defendant's proposed instruction No. 9, the last sentence of which we do not approve. The court properly refused defendant's proposed instructions numbered 8 and 10.

 Appellant assigns as error the admission in evidence of the depositions of Cora Parks, Leroy Congdon,

Pearl Janet Stark, Mrs. Mary Bowen and Mrs. Hattie Knightly, which relate to the acts and conduct of appellant and respondent's husband in the state of Washington during the months of May, June, and July, 1927. Respondent plead, and the evidence shows, that her husband left their home on September 11, 1926. However, he did not sever all relations with respondent, but continued to visit her at their former home on an average of two or three times a week, remaining all night sometimes and at others staying until early morning, all during the fall of 1926 and early spring of 1927. She testifies that her husband stayed at home with her for one week in the spring of 1927,—the date is not certain but thinks it was some time during the latter part of March,—when the parties apparently made an attempt to reconcile their differences. The evidence further shows that respondent's husband and appellant's son left for Tacoma, Washington, on April 13, 1927. On April 27, 1927, Richards, appellant's husband, left her, and on May 10, 1927, appellant went to Tacoma and resumed friendly relations with respondent's husband. These depositions testify to their relations covering the period above mentioned. Respondent further testified that in March, 1927, her husband obtained a loan on a twenty-year endowment life insurance policy, and she signed the papers for the loan; that the policy had formerly named her as beneficiary, but in March, 1927, the appellant's name appeared therein as beneficiary. Premiums on this policy had been paid for fifteen years, and there remained but five years before it matured. There is also testimony that respondent's husband visited appellant's home in the afternoon on several occasions, when it might be inferred her husband was not there. Considering the entire record before us, it cannot be said that the alienation of the husband's affections was complete when he left home September 11, 1926. The evidence rather indicates that he was wavering in his attachment for respondent until he finally went to the state of Washington in April, 1927. We conclude that the depositions were admissible as tending to throw light upon the character of the previous relations

existing between appellant and respondent's husband before the alienation of his affections for respondent was complete, and it was not error to admit them. (See *Lewis v. Roby,* 79 Vt. 487, 118 Am. St. 984, 65 Atl. 524; *Sweikhart v. Hanrahan,* 184 Mich. 201, 150 N. W. 833; *Sherwood v. Titman,* 55 Pa. 77; *Keath v. Shiffer,* 37 Pa. Super. Ct. 573 (580.)

Error is predicated upon the refusal of the court to permit the witness Wellsie J. Smith to testify as to declarations made by respondent's husband during the latter part of September or first part of October, 1926, which had a tendency to show his state of mind toward respondent. The theory upon which the proffered testimony was excluded was that the declarations were not made within sufficient proximity to the date of separation of respondent and her husband to constitute a part of the *res gestae.* Respondent's husband first separated from her on September 11, 1926, visiting her from time to time for nearly six months, when he remained with her for a week in March, 1927, and then finally left her. Apparently, if there was any alienation of the husband's affections, it was gradual, covering a period of many months. Declarations imputing to respondent cruel treatment of him, or showing want of conjugal affection, are not to be admitted unless it affirmatively appears that they were made before the husband was the subject of intrigue with or under the influence of appellant, in whose behalf they are sought to be introduced. (1 Ency. of Evidence, p. 758; *Fratini v. Caslani,* 66 Vt. 273, 44 Am. St. 843, 29 Atl. 252; *Button v. Knight,* 95 Vt. 381, 115 Atl. 499; *Luick v. Arends,* 21 N. D. 614, 132 N. W. 353 (364.) However, since in most cases of alienation of affections, the process of alienation is gradual, such declarations by the husband, made before any overt act showing appellant's influence over the alienated spouse has taken place, will be admitted. Usually, the overt act is the separation itself. (*Harringer v. Keenan,* 117 Wash. 311, 201 Pac. 306; *Jones v. Monson,* 137 Wis. 478, 129 Am. St. 1082, 119 N. W. 179; *Nevins v. Nevins,* 68 Kan. 410, 75 Pac. 492; *Willey v. Howall,* 159 Ky. 805, 169 S. W. 519; *Merrill v. Leisenring,* 149

Mich. 423, 112 N. W. 1072.) · Until such overt act has occurred, the declarations are admissible as part of the *res gestae*. (*Perry v. Lovejoy*, 49 Mich. 529, 14 N. W. 485.) After it has occurred, they are inadmissible as hearsay. (*Brison v. McKellop*, 41 Okl. 374, 138 Pac. 154.) Such declarations, when admissible, are not competent to prove the facts to which they relate, but only to indicate the existence of a state of mind on the part of the declarant which would prompt such statements. (*Clark v. Clark*, 187 Ind. 25, 118 N. E. 123; *Spangenberg v. Christian*, 151 Minn. 356, 186 N. W. 700; *Luick v. Arends, supra.*) And the jury should be so instructed. (*Hardwick v. Hardwick*, 130 Iowa, 230, 106 N. W. 639.) Where declarations regarding the state of declarant's affections are not so blended with the report of the acts and declarations of the plaintiff spouse that the separation of one from the other is impracticable, the declarations admitted should be confined to those revealing a state of mind. (*Preston v. Bowers*, 13 Ohio St. 1, 82 Am. Dec. 430.) Therefore, the court did not err in excluding the proffered testimony of Wellsie J. Smith.

 ██ Respondent objected to questions, on direct examination of witnesses other than plaintiff or her husband, designed to show specific quarrels between respondent and her husband at times prior to the alienation complained of here. The court erred in sustaining these objections. Evidence of marital unhappiness and lack of affection between respondent and her husband was admissible, not to defeat plaintiff's right to recover damages, but in mitigation of damages (30 C. J., p. 1149, sec. 1027; *Humphrey v. Pope*, 1 Cal. App. 374, 82 Pac. 223; *Moelleur v. Moelleur*, 55 Mont. 30, 173 Pac. 419; *Baird v. Carle*, 157 Wis. 565, 147 N. W. 834; *Fratini v. Caslani, supra; Smith v. Sheffield, supra*), since the extent of respondent's injury depends upon the relations existing between her and her husband at and prior to the time of the alleged wrongful acts of appellant. (*McAlpin v. Baird*, 40 S. D. 180, 166 N. W. 639.) Evidence of such quarrels, even though remote, should be admitted for what it is worth. (*Parker v. Newman*, 200 Ala. 103, 75 So.

479.) And evidence of specific quarrels may be shown. (*Allen v. Besecker,* 55 Misc. Rep. 366, 105 N. Y. Supp. 416.) That such quarrels were isolated or remote goes rather to the weight of the evidence than to its admissibility; and the jury should be instructed as to the purpose for which such testimony is admissible.

Upon the theory that they related to specific instances, the court sustained objections of respondent to appellant's offers to prove that, at different times in the years 1925 and 1927, she (respondent) went to the homes or places of business of three different women, other than appellant, and accused each of being too familiar with her (respondent's) husband. The fact that the evidence related to specific instances, is not a bar to its admissibility. (1 Wigmore on Evidence, 2d ed., p. 455, sec. 211; *Allen v. Besecker, supra.*) The mere fact that they were isolated instances, would go to their weight as evidence, not to their admissibility. This evidence was competent as tending to mitigate damages, and also as tending to show that appellant was not the controlling cause of the alienation of the affections of respondent's husband. (*Phillips v. Thomas,* 70 Wash. 533, Ann. Cas. 1914B, 800, 127 Pac. 97 (99), 42 L. R. A., N. S., 582; *Angell v. Reynolds,* 26 R. I. 160, 106 Am. St. 707, 58 Atl. 625; *Parker v. Newman, supra; Woodhouse v. Woodhouse, supra.*)

Appellant challenges the court's rulings in sustaining objections to offers by appellant to prove, by the father and mother of respondent's husband, certain specific instances of unhappiness in the domestic relations of respondent and her husband. These offers consist in large part of statements made by respondent's husband to the offered witnesses, indicating that his domestic life was unhappy. The offers were somewhat vague as to the exact time covered and should have been more definite. Apparently, however, they related to statements made at divers times prior to September 11, 1926, and before any overt act in the alienation of the husband's affections, if caused by appellant, had taken place. The offered testimony was competent as tend-

ing to show a lack of affection by the husband for his wife at a time before appellant interfered, and that the alienation was not caused by appellant.

Appellant offered to prove by the witness Eagleson that, at a time from four to six months prior to September 11, 1926, respondent's husband said in effect that respondent's extravagance kept him broke, and that it was impossible for him to get ahead or make instalment payments on the house he was then buying. The court rightly sustained an objection to this offer. It was too remote and did not tend to prove affection or lack of affection by the husband for respondent. The same matter was contained in offers of proof by other witnesses, and the objection thereto was properly sustained.

Appellant assigns as error the refusal of the court to admit in evidence twenty-six checks given by respondent's husband to her and their minor daughter. We think these exhibits admissible as tending to show compliance on the part of the husband with the requirements of the property settlement.

Over objection of appellant, the court admitted in evidence the American Experience Tables of Mortality (41 C. J., p. 216, n. 65a) ''for the purpose of showing the expectancy on the life of'' plaintiff's husband. Respondent urges that the table is applicable to both respondent and her husband, their ages being the same, and was admissible to show the number of years respondent might have expected the association and support of her husband, on the theory that where the marital relation is once shown to exist there is a presumption that it continues until death. (38 C. J., p. 1328, sec. 102.) Assuming such a presumption applicable to a case of this character, it is based upon the further presumption that the love and affection existing between the spouses would likewise continue until the death of one of them. We question if we are permitted to indulge in the latter presumption; but, in any event, we are asked to base a presumption upon a presumption, which we cannot do. The gravamen of respondent's right to recover is

founded upon the loss of her husband's conjugal society or consortium. (30 C. J., p. 1123; *Pugsley v. Smyth,* 98 Or. 448, 194 Pac. 686; *Boom v. Boom,* 206 Iowa, 70, 220 N. W. 17.) Such loss may or may not be permanent, according as the parties interested may subsequently determine. The same reasoning applies to the loss of support. Respondent was deprived of something that is of its nature not necessarily permanent; and mortality tables, "at the best uncertain and conjectural evidence" (*Kahn v. Herold,* (C. C.) 147 Fed. 575 (582), could not aid the jury in assessing respondent's damages. (See 3 Nichols on Applied Evidence, p. 3123.) The expectation of life of respondent or her husband was not relevant under the facts of the instant case, and the admission of the tables was error.

The complaint alleged that in April, 1927, appellant, for the purpose of depriving respondent of the comfort, society, assistance, and support of respondent's husband, enticed him to leave Idaho and go with appellant to Seattle and Tacoma, where at each of said places appellant and the said husband "illegally, unlawfully, and illegally and unlawfully lived and cohabited and carnally knew each other as husband and wife." Respondent introduced testimony establishing facts from which the jury might infer that appellant and the husband of respondent had committed adultery at either or both of the places named. Appellant denied there was any illicit intercourse at said places or at any time or place between herself and said husband. She then offered to prove her general reputation for chastity, which offer the court denied. This ruling is assigned as error.

The rule generally, in the absence of special statute, is that in a civil action the character of a party thereto is not a proper subject of inquiry (22 C. J., p. 470, sec. 561; 10 R. C. L., p. 947, sec. 117; 1 Wigmore on Evidence, 2d ed., p. 286; 4 Chamberlayne on Evidence, secs. 3273, 3274, 3282; 2 Jones on Evidence, 2d ed., secs. 638, 639, 663, 664, 667), which rule is subject to many exceptions in different jurisdictions, as where a party is charged in a civil action with a crime or act involving moral turpitude

(4 Chamberlayne on Evidence, sec. 3281; 22 C. J., p. 474) which is endeavored to be established by circumstantial evidence (22 C. J., p. 474; *Henry v. Brown,* 2 Heisk. (Tenn.) 213); or the character of the party is the very matter in issue. (22 C. J., p. 472, sec. 562; 10 R. C. L., p. 948, sec. 118.)

The entire question is controlled by the provisions of C. S., sec. 8040, which reads:

"Evidence of the good character of a party is not admissible in a civil action, nor of a witness in any action, until the character of such party or witness has been impeached, or unless the issue involves his character."

The California courts, in construing a statute (Cal. Code Civ. Proc., sec. 2053) identical in language with our C. S., sec. 8040, have held that allegations charging a wife with adultery do not put in issue her character, and sustained the trial court in excluding evidence thereof. (*Van Horn v. Van Horn,* 5 Cal. App. 719, 91 Pac. 260.) The same court later held in an action for breach of promise to marry, with seduction alleged in aggravation of damages, that the character of the defendant was not put in issue by the complaint. (*Rodetsky v. Nerney,* 72 Cal. App. 545, 237 Pac. 791.) It had been formerly held by the supreme court of California in *Vance v. Richardson,* 110 Cal. 414, 42 Pac. 909, that in a civil action for assault and battery, the general character of the defendant for peace and quietness was not involved under this California statute. All of the California cases were decided after the adoption by Idaho of Cal. Code Civ. Proc., sec. 2053 (our C. S., sec. 8040).

Oregon likewise has a similar statute (Olson's Or. Laws, sec. 865), and the supreme court of that state has held evidence of character of a party in a civil action on a fire insurance policy, inadmissible under that statute. (*Munkers v. Farmers' & Merchants' Ins. Co.,* 30 Or. 211, 46 Pac. 850.)

In the case at bar, "*the issue*" was whether the appellant had alienated the affections of respondent's husband. Adultery was alleged and proof offered to sustain the allegation, not as a part of the issue of alienation charged, but in aggra-

vation of damages. (30 C. J., p. 1151, sec 1028; *Merritt v. Cravens*, 168 Ky. 155, 181 S. W. 970, L. R. A. 1917F, 935.) There could be a cause of action for alienation of affections without adultery being charged or proven. (*Pugsley v. Smyth, supra; Keath v. Shiffer, supra.*) The issue did not involve appellant's character, and the trial court did not err in excluding the character of evidence offered, and in refusing to instruct the jury as proposed by defendant's requested instruction No. 7.

Error is predicated upon the giving of the court's instructions numbered 10 and 11, respectively, upon the question of damages. These instructions, after eliminating therefrom all reference to loss of support or maintenance as an element of damage in this case, are substantially correct. The jury should be instructed that evidence of prior unhappy relations or estrangement between respondent and her husband, should be considered by them only in mitigation of damages, if they find for the plaintiff, and not as a bar to the action. (See *Lewis v. Roby, supra; Baird v. Carle, supra; Williamson v. Osenton*, 220 Fed. 653, 136 C. C. A. 261.)

Judgment and order reversed and cause remanded, with directions to grant a new trial. Costs to appellant.

Givens, C. J., and Budge, Lee and McNaughton, JJ., concur.